IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAWN LAMBERT,

          Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

          Defendant.

CIVIL ACTION
NO. 19-0816

**OPINION**

**Slomsky, J.**                                                                                               October 16, 2019

**I.    INTRODUCTION**

On January 14, 2019, Plaintiff Dawn Lambert ("Plaintiff") filed a declaratory judgment action (Doc. No. 1) in the Court of Common Pleas of Philadelphia County against Defendant State Farm Mutual Automobile Insurance Company ("Defendant"), seeking Underinsured Motorist Benefits ("UIM")[1] pursuant to 75 Pa. C.S. § 1738[2] of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). On February 25, 2019, Defendant removed this action to this

---

[1] Underinsured Motorist Benefits are available to someone injured in an accident with an at-fault driver whose insurance coverage has liability limits that are too low to cover the damage or medical expenses of the injured person.

[2] 75 Pa. C.S. § 1738, provides in part:

    (a) When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

1

Court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a).³ (Doc. No. 1.)

Before the Court is Plaintiff's Motion to Remand the case to the Court of Common Pleas of Philadelphia County. (Doc. No. 3.) Plaintiff argues that because this case addresses an unsettled and novel issue of Pennsylvania law, this case should be remanded to state court pursuant to the discretionary nature of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202⁴ (Doc. No. 3.) Defendant submitted a Response in Opposition (Doc. No. 4.), arguing that although this case implicates primarily issues of state law, there is no indication that the matter addresses an unsettled and novel issue. (Id.) This Motion is now ripe for a decision. For reasons that follow, Plaintiff's Motion to Remand will be granted.

---

³ 28 U.S.C. § 1332, provides in relevant part:

    (a)(1) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states.

⁴ 28 U.S.C. § 2201 provides in part:

    (a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2202 provides:

    Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

## II. BACKGROUND

On April 24, 2017, Plaintiff Dawn Lambert ("Plaintiff") was a passenger on a motorcycle owned and operated by Edward Nothe ("Nothe") in Chester County of Pennsylvania. (Doc. No. 1. ¶ 6.) At around 2:00 a.m., Nothe lost control of the motorcycle, causing the vehicle to crash. (Id. ¶ 7.) Plaintiff was thrown from the vehicle and sustained serious injuries. (Id.)

At the time of the accident, Nothe had an insurance policy issued by Progressive Insurance Company ("Progressive"). This policy had $100,000 in liability coverage for personal injury. (Id. ¶ 9.) Additionally, Plaintiff's husband had three insurance policies, which also covered liability for a motor vehicle accident, issued by Defendant State Farm Mutual Insurance Company ("Defendant"). (Id.) Each provided coverage of $100,000 per person/$300,000 per accident in Underinsured Motorist Benefits ("UIM"). (Doc. No. 3-2 ¶ 3.)

The first policy, numbered 292 1478-B01-38 ("Policy 1"), covered a Harley Davidson motorcycle. The second policy, numbered 257 5640-B27-38B ("Policy 2"), covered four cars; a 2001 Toyota Highlander, a 1999 Acura Integra, a 1993 Ford F250, and a 1983 Toyota Supra. The third policy numbered 300-9481-E29-38A ("Policy 3"), covered two cars; a 1993 Honda Civic and a 1992 Honda Prelude. (Doc. No. 1. ¶ 4.) Under each policy, Plaintiff was listed as an insured person. (Id.) For each policy, Plaintiff's husband executed a form agreeing that the policies would not stack in the event of an accident[5]. Pursuant to 75 Pa. C.S. § 1738, this form is known as

---

[5] Stacking is "the ability to add coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." Costa v. Progressive Preferred Ins. Co., No. 2:16-cv-74, 2016 WL 3220515 (citing Craley v. State Farm Fire and Cas. Co., 895 A.2d. 530, 541 (Pa. 2006)). In insurance coverage cases, intra-policy stacking is the concept of stacking within one policy, whereas inter-policy stacking is the concept of stacking multiple polices. (Id.) The ability to stack coverage amongst insurance policies can be waived. (Id.) Pennsylvania courts have held that "waiver(s) must be 'knowing' in the sense that the insured must know that [they are] giving up the ability to stack coverage available from separate policies." Costa, 2016 WL 3220515, at *3.

stacking rejection form. (Doc. No. 3-2. ¶ 3.) Defendant charges a lower insurance premium when stacking is rejected.

Plaintiff sought to recover payment for her injuries from both Progressive and Defendant State Farm. First, Plaintiff made a claim for $100,000 under the terms of the Progressive insurance policy. (Id. at ¶ 2.) Plaintiff settled this claim through a private agreement with Progressive. (Id. at ¶ 2.)

Next, Plaintiff made three claims for Underinsured Motorist Benefits ("UIM") under the terms of Defendant's policies as described above. Defendant settled Plaintiff's first claim for UIM benefits under Policy 1 (covering the motorcycle) for $100,000. (Id.) Plaintiff then sought to recover an additional $200,000 by stacking Policy 2 onto Policy 1, and Policy 3 onto Policy 2. (Id. at ¶ 3.) Defendant denied Plaintiff's request to stack coverage under Policies 2 and 3 because her husband rejected and relinquished stacking coverage in exchange for a lower premium. (Id.) The stacking waiver, included in each policy, read:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under <u>the policy</u> for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under <u>the policy</u>. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in <u>the policy</u>. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage. (Emphasis added.)[6]

(Doc. No. 4 at 22-26.) Plaintiff's husband agreed to the three waivers by signing the bottom of the form. (Id.)

---

[6] The words "the policy" are emphasized because the waiver form for each policy refers only to that policy. The critical issue here though is whether the stacking waiver for a policy covering multiple vehicles applies to additional policies covering multiple vehicles where stacking has also been rejected. Further, each policy covers the same insured.

4

On January 14, 2019, Plaintiff filed a declaratory judgment action in the Court of Common Pleas of Philadelphia County, seeking the additional $200,000 in UIM under the two remaining policies. (Id.) Plaintiff alleges that the stacking rejection forms, signed by her husband, merely rejected intra-policy (within one policy) stacking and not inter-policy stacking (between policies), and therefore she is entitled to stack the UIM benefits of the two remaining policies. (Doc. No. 3-2).

As noted, on February 25, 2019, Defendant removed the action to this Court. Plaintiff now seeks to remand the case to state court, citing the discretionary nature of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. (Doc. No. 3.) Before the Court is Plaintiff's Motion to Remand (Doc. No. 3) and Defendant's Response in Opposition. (Doc. No. 4.) For the reasons that follow, Plaintiff's Motion to Remand will be granted.

### III. STANDARD OF REVIEW

Plaintiff seeks a declaratory judgment on the propriety of stacking the insurance policies in this case. Pursuant to the Federal Declaratory Judgment Act ("DJA"), she asks the Court to declare that she is entitled to a greater amount of coverage by stacking the three policies her husband holds with Defendant. Under the DJA, courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment is an exception to the general rule that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 821 (1976)). Under the DJA, district courts have "discretionary, rather than compulsory, jurisdiction . . . ." Reifer v. Westport Ins. Co., 751 F.3d 129, 134 (3d Cir. 2014) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)).

Accordingly, district courts are authorized "in the sound exercise of [their] discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Further, the Supreme Court has held that district courts have discretion to decide whether and when to entertain an action under the DJA, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. Id. at 282

Importantly, these principles also apply to a case removed to federal court where a party seeks a declaratory judgment under the state's declaratory judgment act. Reifer, 751 F.3d at 134 n. 4 (stating…the question of whether to exercise federal jurisdiction to resolve a controversy involving a declaratory judgment is a procedural issue to be determined under federal law, even if the action was brought under a state declaratory judgment statute).

## IV. ANALYSIS

Plaintiff moves to remand this case to the Court of Common Pleas of Philadelphia County, arguing that (1) the Court should decline to exercise jurisdiction over this matter pursuant to its discretionary authority under DJA; and (2) remanding to state court is appropriate because the instant case involves an important unsettled and novel question of Pennsylvania law. (Doc. No. 3 ¶ 5.) In opposition, Defendant argues that although this case implicates primarily issues of state law, there is no indication that the coverage issue would be better settled in state court. (Doc. No. 4 ¶ 3.) In support of its argument, Defendant asserts that this issue is "one which has been resolved in Federal Court multiple times before." (Id.) The Court agrees with Plaintiff and will remand this case to state court.

## A. Factors to Consider in Determining Whether The Court Should Exercise Jurisdiction Over This Case Pursuant to its Discretionary Authority Under the DJA.

The Federal Declaratory Judgment Act ("DJA"), provides that courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Pursuant to DJA, the United States Supreme Court has held that federal courts have discretionary rather than mandatory jurisdiction over declaratory judgment actions. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); Brillhart, 316 U.S. at 494-95. Consistent with the non-obligatory nature of the remedy, in determining whether to exercise its authority, federal courts must exercise prudent analysis of the claims and the issues presented before the court. Id. As stated in Wilton, "in the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yield to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288.

The Third Circuit Court of Appeals has set forth a "non-exhaustive" list of factors for a district court to consider when declining jurisdiction. Reifer, 751 F.3d at 144 147. First, a court must determine whether there is a parallel state court proceeding, meaning "a matter pending in state court in which all the matters in controversy between the parties could be fully adjudicated." Id.; see also Brillhart, 316 U.S. at 494-95. Although not determinative, a finding that such parallel proceedings exist in state court "militates significantly in favor of declining jurisdiction." Reifer, 751 F.3d at 144-45. However, the lack of a parallel state court proceeding does not necessarily require the Court to exercise jurisdiction over the case. Id. at 143 ("We have not yet addressed the related question of whether the mere non-existence of pending parallel state court proceedings requires the district court to exercise its jurisdiction and hear the case under the DJA."). In the instant case, it is undisputed that no parallel proceeding now exists in state court because the action

7

brought in state court has been removed to this Court. Because this factor is not dispositive, however, the Court will proceed to analyze other factors.

After determining whether a parallel state proceeding exists, courts should weigh certain enumerated factors "bearing on the usefulness of the declaratory judgment remedy." Kelly v. Maxum Specialty Insurance Group, 868 F.3d 274, 282 (3d Cir. 2017). In Reifer, the Court provided the following list of non-exhaustive factors to consider:

1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

2) the convenience of the parties;

3) the public interest in settlement of the uncertainty of obligation;

4) the availability and relative convenience of other remedies;

5) a general policy of restraint when the same issues are pending in state court;

6) avoidance of duplicative litigation;

7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

8) in the insurance context, an inherent conflict of interest between an insurers' duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Id. at 146. Courts are instructed to give "meaningful consideration" to these factors "to the extent they are relevant." Id. Importantly, the Third Circuit also noted that "there will be situations in which district courts must consult and address other relevant case law or considerations." Id.

In addition, Courts have placed importance on determining whether the declaratory action involves "unsettled questions of state law." State Auto Ins. Companies v. Summy, 234 F.3d 131,

135 (3d. Cir. 2000); see also Reifer, 751 F.3d at 141. For example, in Summy, the court held that when applicable state law is "uncertain or undetermined," district courts should be "particularly reluctant" to exercise its jurisdiction under the DJA. Id.; see also Reifer, 751 F.3d at 141. The court further said that "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law." Summy, 234 F.3d at 135.

Because there is no parallel state proceeding to the instant case, and the lack of parallel state proceedings is non-determinative, the Court will analyze whether this case involves an unsettled and novel question of Pennsylvania law.

   **B. This Case Should be Remanded Because It Involves an Unsettled Question of Pennsylvania Law.**

Plaintiff argues that the Court should decline jurisdiction because this case presents an unsettled question of Pennsylvania law. Courts have held that declining jurisdiction is proper when the lack of pending parallel proceedings is outweighed by another "relevant consideration, namely, the nature of the state law issue." Reifer, 751 F.3d. at 148; see also Summy, 234 F.3d at 135. Courts may use their discretion to decline jurisdiction when the case presents an "an uncertain or undetermined" question of Pennsylvania law. Id. In Reifer, the plaintiff filed an action in state court against an insurer seeking a declaratory judgment of a legal malpractice insurance policy claim.[7] Reifer, 751 F.3d. at 132. In her declaratory judgment complaint, plaintiff argued that her

---

[7] In Reifer, the plaintiff suffered a worker's compensation injury during her employment. See Reifer, 751 F.3d. at 132. Her injuries prevented her from returning to work and she retained an attorney out of concern that her employer would bring proceedings against her. Id. Alleging that the attorney retained to represent her in the worker's compensation case acted negligently during the proceedings, plaintiff commenced a malpractice claim against the attorney. Id. The attorney's insurance provider, Westport Insurance Company, refused to defend the attorney. Id. Plaintiff then filed an action in state court against Westport, seeking a declaratory judgment

9

claims raised "'critical issues of state law and public policy that should be decided by Pennsylvania state courts." Id. at 148. The Third Circuit agreed and affirmed the District Court's decision not to exercise jurisdiction, reasoning:

> We conclude that declining jurisdiction was proper because the lack of pending parallel state proceedings was outweighed by another relevant consideration, namely, the nature of the state law issue raised by Reifer. Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to "step back" and be "particularly reluctant" to exercise DJA jurisdiction. The fact that district courts are limited to predicting—rather than establishing—state law requires "serious consideration" and is "especially important in insurance coverage cases."

Id. at 148 (citations omitted).

Similar to the law at issue in Reifer, the law at issue in the instant case is unsettled and undetermined. In her declaratory judgment complaint, Plaintiff argues that this case presents an "unsettled and novel question of Pennsylvania law," that is, when Plaintiff's husband executed the stacking waiver form for each policy, was he only rejecting stacking of benefits for the specific policy, which would be a rejection of intra-policy stacking benefits, or rejecting stacking for the three policies when considered together. As noted, the latter kind of stacking is known as inter-policy stacking. (Doc. No. 3 ¶ 2.). Pennsylvania courts have only addressed the issue of stacking within a single policy and stacking between multiple policies when there is only single vehicle coverage. See Costa v. Progressive Preferred Ins. Co., 2016 WL 3220515; Craley v. State Farm Fireand Cas. Co., 895 A.2d. 530, 541 (Pa. 2006)). Courts have not squarely addressed the issue of stacking of multiple policies that cover multiple vehicles, which is the case here. Stacking across different policies covering multiple vehicles has not be the subject of a decision handed down by

---

that the attorney was covered by the legal malpractice insurance policy issued by Westport. Id.

10

the Supreme Court of Pennsylvania[8]. For this reason, the Court will consider the Reifer factors in deciding whether remand is warranted.

However, the Pennsylvania Supreme Court has squarely addressed whether executing the stacking waiver form when there is a single vehicle covered under one insurance policy establishes a rejection of inter-policy stacking benefits. In this circumstance, the Court has instructed that "some form of knowing waiver must occur before we allow enforcement of an inter-policy stacking waiver." Craley, 895 A.2d. at 542. In Craley, the court held that in a situation where a single vehicle is covered under one insurance policy, inter-policy stacking benefits are considered to be knowingly "rejected" when the rejection form[9] is executed. Id. However, neither the Pennsylvania legislature nor relevant case law has determined whether waivers of inter-policy stacking can be considered "knowing" in the context of multi-vehicle policies covering different automobiles, which is the case here.[10] Footnote 18 of the Craley decision highlights this point.

---

[8] Pennsylvania courts have addressed the issue of waiver of stacking UIM benefits when a vehicle is added onto a policy after an insured executes the stacking waiver form. See Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194 (Pa. 2007); Toner v. The Travelers Home and Marine Ins. Co., 2016 Pa. Super 69, 137 A.3d 583 (2016); Shipp v. Phoenix Ins. Co., 2012 Pa. Super 167, 51 A.3d 219 (2012). For example, in Sackett, the Supreme Court of Pennsylvania addressed the issue of stacking rejection when a named insured purchases UIM benefits and then adds a newly-acquired vehicle to their policy. In this situation, the court held that the named insured purchased UIM coverage when he added a third vehicle to a policy, and therefore the insurer should have provided another opportunity to waive stacked limits. However, in a footnote in the Opinion, the Court noted that the holding was limited to a scenario involving the addition of a vehicle to a policy covering multiple vehicles. These facts are different from the facts in the instant case because there is nothing in the record indicating that Plaintiff or her husband added a vehicle to their policy after executing the waiver provision.

[9] As noted, 75 Pa. C.S. § 1738 permits stacking of uninsured and underinsured benefits and the option to waive these benefits. In the instant case, Plaintiff's husband executed a "rejection form."

[10] As noted, Plaintiff sought to stack Policies 2 and 3, both covering multiple vehicles, onto Policy 1. (Doc. No. 1 at 11.) Also stated previously, Defendant rejected her request to do so because

There, the Pennsylvania Supreme Court clarified that while it has settled the question of a "knowing" waiver of inter-policy stacking with respect to single-vehicle policies, it declined to extend this decision to encompass multi-vehicle policies. See Craley, at n. 18. The footnote states:

> Although we conclude that the waiver in this case was knowing, our consideration nonetheless raises questions as to whether the waiver would be knowing if [Plaintiff's] policy had covered more than one vehicle. If a named insured insures some cars under one policy ("the policy") and others under a separate policy ("the second policy") and signs the form provided in subsection (d) which refers to the waiver of stacking "for each motor vehicle insured under *the policy*," that named insured reasonably could assume that he received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by "the policy" with no knowledge that he was waiving stacking of the applicable limits of "the policy" to "the second policy," despite paying premiums on both policies. We urge the legislature or the Commissioner to clarify whether and insurers may secure a valid waiver in such a case. [11]

Craley, 895 A.2d. at 542 n. 18. Thus, Pennsylvania law concluded that waivers of inter-policy stacking are considered "knowing," and therefore valid, with respect to single-vehicle policies. See Costa, 2016 WL 3220515, Venturato v. State Farm Mutual Automobile Insurance Company, 2018 WL 5279379, State Farm v. Powell, 879 F. Supp. 538 (W.D. Pa. 1995). Importantly, this holding does not extend to multi-vehicle policies.

In opposition, Defendant contends that Pennsylvania law concerning waivers of inter-policy stacking is known and settled. It relies on Costa v. Progressive Preferred Ins. Co. See Costa, 2016 WL 3220515. The court in Costa, dealing with a single-vehicle policy, chose to exercise

---

Plaintiff's husband waived his right to stacking. Id. Accordingly, this case presents a question of the validity of waivers of inter-policy stacking of two separate multi-vehicle policies.

[11] To this point, the Craley court "urge[d] the [Pennsylvania] legislature or the Commissioner to clarify whether and how insurers may secure a valid waiver in such a case." Craley, 895 A.2d. at n. 18. As of the date of this Opinion, Section 1738 has not been amended since Craley was decided in 2006. This issue remains unsettled. The Court is unaware of any amendment to the form that specifically addresses waiver of UIM stacking for multiple vehicle policies.

jurisdiction over a declaratory judgment action after concluding that Pennsylvania law, on the validity of waivers of inter-policy stacking, was known and settled. Id. The Court highlighted the holding in Craley by stating the following:

> The waiver must be "knowing" in the sense that the insured must know that she is giving up the ability to stack coverage available from separate policies. The insured in Craley had signed the statutory waiver form, which "does not clearly address" inter-policy stacking. Nonetheless, the Supreme Court found that the insured "had sufficient notice and that his waiver . . . was knowing." As the Craley Court explained, because the policy covered only one vehicle, "[the insured] could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on 'the policy'." Instead, "the only interpretation fairly available to [the insured] was that his premium-reducing waiver applied to inter-policy stacking."
>
> The Supreme Court noted, however, that the result might have been different if the policy had covered more than one vehicle because then it wouldn't have been clear what exactly the insured was waiving: the ability to stack vehicles under one policy or the ability to stack coverage available under separate policies.

Costa, 2016 WL 3220515, at *2 (citations omitted). The Costa court analogized the factual circumstances presented in that case to the circumstances presented in Craley as follows:

> Here, as in Craley, the policy just covers one vehicle. And the statutory waiver form signed by Ms. Costa states, "I understand that my premiums will be reduced if I reject this coverage." By signing that waiver and receiving the concomitant premium reduction, Ms. Costa is presumed to have known that the "waiver applied to inter-policy stacking," notwithstanding her contention that she did not understand what she was signing.

Costa, 2016 WL 3220515, at *3. While Costa has provided an apt summary of Pennsylvania law on the knowing waiver of inter-policy stacking in the context of single-vehicle policies, the Pennsylvania Supreme Court has correctly pointed out that its holding in Craley did not extend to multi-vehicle policies and urged the legislature or the insurance companies to decide the issue. Because this case raises a question of the validity of waivers with respect to different multi-vehicle policies, Defendant's argument is unpersuasive, and Costa does not apply here.

13

Thus, because Pennsylvania courts have not reached a well-settled conclusion on inter-policy stacking of multi-vehicle policies, this case presents a question of undetermined or unsettled state law. The Third Circuit has deemed it "counterproductive for a district court to entertain jurisdiction over declaratory judgment action[s] . . . which might otherwise be candidates for certification to the state's highest court." Summy, 234 F.3d at 135. The state's legitimate interest in deciding such matters "must not be given short shrift simply because the parties have perceived some advantage of litigating in the federal forum." Id. at 136.

Regarding the other Reifer factors, they pose no impediment to remanding the case to state court. The convenience of the parties is a neutral factor in this case, as there is no inconvenience to either side in litigating to state court. Further, there is no real public interest in settling this obligation in federal court when it involves a question of state law. Moreover, given the absence of precedent covering the dispute in this case, it seems clear that the matter does not arise with any frequency. In addition, there is no other remedy that applies here other than a decision on the declaratory judgment motion, and the parties have not brought to the Court's attention that there is a matter pending in state court. There is no duplicative litigation and this case does not involve procedural fencing where one party is racing to have the matter decided in federal court for res judicata purposes. Finally, whether there is a conflict of interest between an insurer's duty to defend and policy exclusion is not an issue here.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand (Doc. No. 3) will be granted. An appropriate order follows.